(38 Misc. Rep. 558.)

### NATIONAL PARK BANK OF NEW YORK v. CLARK et al.

(Supreme Court, Special Term, New York County. August, 1902.) ·

1. BENEFICIAL SOCIETY—INSOLVENCY—RELIEF FUND.

Where a relief fund belonging to a foreign benefit order is on deposit in a bank in New York, and the constitution of such order and certificates of membership secured it to members disabled, and, in case of death, to beneficiaries, it is held in trust for that purpose, and so remains, where, on the insolvency of the order, it passes into the hands of a receiver appointed in a foreign state.

2. SAME—DISTRIBUTION.

Where a fund is deposited in the state of New York to secure members of a foreign benefit order, and is insufficient, on the insolvency of the order, to pay all, it must be distributed pro rata among the disabled members and beneficiaries, wherever resident, whose claims had been allowed at the time of the appointment of a receiver for the order.

3. SAME—PREFERENCES—ATTACHMENT.

Where a relief fund is on deposit, belonging to a foreign benefit order, for the benefit of disabled members and beneficiaries, and the order·becomes insolvent, no preference is acquired by attachment in a suit by resident creditors.

4. SAME—RECEIVERS—CONTROL OF FUND.

Where a foreign benefit order becomes insolvent, and a receiver is appointed in a foreign state and also in New York, the court may protect domestic creditors to the extent of directing a relief fund on deposit in New York to be paid to the New York receivers; they to pay over any balance, after paying the expenses of the receivership, to the foreign receiver; he giving a bond to distribute it according to the principles laid down by the courts of New York for the distribution of said fund.

Action by National Park Bank of New York against Cyrus J. Clark, receiver of Order of Chosen Friends, and others. Plaintiff had

77 N.Y.S.—69

on deposit a fund, which had been deposited in court, and the claims of several defendants thereto were to be determined in an action. Judgment for certain defendants.

Howard H. Morse and Thomas Cooper Byrnes, for defendant Cyrus J. Clark, as receiver of said order in the state of Indiana.

William L. Mathot, for defendants William J. Martin and Benj. H. Reeve, as receivers of said order in the state of New York.

Knabe, Dunn & Butler, for defendant William F. Grell, as sheriff of the county of New York.

Norman S. Dike, for defendant Geo. O. Emmons, an attaching creditor.

Isaac V. Schavrien, for defendants Garvey, attaching creditors.

Geo. W. Brower, for defendant Justina Speer, an attaching creditor.

Henry R. Willis, for defendant Sophia Anderson, an attaching creditor.

James S. d'Arcy, for defendant Lizzie G. Brown, an attaching creditor.

William McCloskey, for defendant Emanuel Popper.

WRIGHT, J. On December 14, 1900, the superior court of Marion county, Ind., a court of original jurisdiction, appointed the defendant Cyrus J. Clark a temporary receiver of the property of said order, wherever situated in the United States, on the ground of insolvency. At that time the deposit aforesaid was in the plaintiff's custody. On May 2, 1901, said appointment was made permanent by judgment, and the corporate franchise of the said order adjudged forfeited. On December 17, 1900, the defendant attaching creditors, who are beneficiaries of said order, attached said fund under their respective actions in the supreme court of this state. On December 22, 1900, in an action brought by Emanuel Popper against said order in this state, the defendant William J. Martin was appointed receiver of the property of said corporation in this state, and subsequently final judgment was entered appointing said Martin and the defendant Reeve permanent receivers. Said receivers of the state of Indiana and of this state claim that the fund should be paid over to the New York receivers, and that, after deducting the expense of their receivership, it should be paid over to the Indiana receiver, to be distributed pro rata to all who may be legally and equitably entitled thereto, irrespective of the residence of claimants. The defendant attaching creditors claim a prior right to the fund in the order of the levy of their attachments. The constitution, by-laws, and regulations of the order authorized by law, together with the certificate of membership, constitute the contract upon which the rights of the parties rest. People v. Grand Lodge of E. O. M. A., 156 N. Y. 533, 51 N. E. 299. The supreme governing, managing, and legislative power of the order was vested in the supreme council, which had a right to make, alter, and amend a constitution, by-laws, general laws, and rules of discipline for the government of every portion, branch or department of the association. Its principal place of business was in the city of Indianapolis, Ind. Grand councils were organized in different states, which had jurisdiction in such state over sub-

ordinate councils, subject to the general jurisdiction of the supreme council. The supreme council maintained a general fund for the purpose of defraying its ordinary expenses, etc., and a relief fund for the benefit of members disabled, and for beneficiaries in case of death. The funds of the corporation were derived from assessments of an amount fixed according to age, and the amount named in their respective certificates, from the members of the order through the subordinate councils, and transmitted by them to the supreme council; 90 per cent. of which went into the relief fund, and 10 per cent. into the general fund. The assessments were payable on the first day of each month, and were required to be paid before the last day of the month. Payments of funds were made upon relief fund warrants, executed by certain officers of the supreme council. There was issued to each member, by the supreme council, a certificate to the effect that the member was "entitled to all rights and privileges of membership, and a benefit not exceeding [a sum mentioned therein, not exceeding $3,000], from the relief fund of said order, which sum shall, in case of death, be paid beneficiaries in the manner and subject to the conditions set forth in the laws governing said relief fund; and in the application for membership * * * this certificate to be in force and binding when accepted in writing * * * so long as said member shall comply with the requirements of the constitution, laws, and regulations now in force or hereafter adopted for the government of the order." This relief fund had certain limitations. For instance, it was not subject to disposition by a last will and testament. A benefit could not be made payable to a creditor, nor assigned as a security for the debt of a member; and each member during his life had full control of the fund in case of disability, notwithstanding some other person had been designated to receive a benefit. It was also provided that "no part of the relief fund shall be used for general fund purposes; and the supreme treasurer, upon receiving any assessment, shall apportion the same to the different funds." So we have here a fund devoted by the law providing for its existence, and also by the subsequent agreement of every member of the order, to a certain definite purpose. It was paid by the members to the supreme council for that purpose, and it was hedged about by rigid provisions for its protection against diversion from that object by the supreme council or any other authority. The body of beneficiaries entitled to this fund was determined by the claims that were from time to time passed upon and allowed. Section 313 of the relief fund laws provides:

"When the amount in the supreme treasury, belonging to the relief fund, together with the amount receivable during any calendar month, after deducting the amounts required for death or disability claims, is less than $3,000, or is not sufficient to pay all claims of which he has written notice, then the supreme recorder shall collect such additional assessments as may be necessary to make such payments, and shall notify subordinate councils accordingly."

No assessment was made for the payment of any particular claim, but only for the payment of a body of claims, as above stated. No one claim was entitled to a preference.

For the convenience of claimants, depositories for said relief fund

were appointed in different parts of the United States. The National Park Bank of New York was one of them. While the order was solvent and doing business in the ordinary manner, warrants for the payment of claims were issued by the supreme council, through its proper officers, in the order of the allowance of claims; but they were paid by a depository, upon presentation, without regard to such order of allowance. From the foregoing, it clearly appears that said fund was impressed with a trust for the purpose aforesaid. When this fund went into the hands of the Indiana receiver by virtue of his temporary appointment, the body of beneficiaries equitably interested in the fund was composed of those whose outstanding claims had been allowed up to the time of his appointment; that being the date on which the proceedings for the dissolution of the order were commenced. People v. Life & Reserve Ass'n, 150 N. Y. 94, 45 N. E. 8. And, since the fund is insufficient to pay each one in full, it must be distributed pro rata among those claimants. Cowen v. Failey, 149 Ind. 390, 49 N. E. 270; In re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E. 114. "All creditors of a corporation, wherever residing, are entitled, in case of insolvency, to have the general assets distributed among them upon principles of perfect equality. The courts of one state have no right to favor domestic creditors in the distribution, but it must be made upon the principles of equality." Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432. But the courts of any state have a right to make provision for the protection of its domestic creditors upon directing funds in such case to be paid over to the receiver at the seat of the domicile of the corporation in a foreign state. People v. Granite State Provident Ass'n, 161 N. Y. 495, 55 N. E. 1053. The following cases substantiate the rule above mentioned that preferences to the fund do not accrue from the fact that some claims matured and were approved and allowed before others, in a case like this, where the moneys are collected to pay claims generally, and not for the purpose of paying any particular claim or claims. People v. Grand Lodge of E. O. M. A., 156 N. Y. 533, 51 N. E. 299; People v. Life & Reserve Ass'n, 150 N. Y. 94, 45 N. E. 8. The counsel for the attaching creditors cite several cases for the purpose of endeavoring to substantiate their claims to a preference by virtue of their liens of attachment; but those cases do not apply to a case like this, where the fund attached is a trust fund. Their claims are, therefore, subordinate to the rights of the receivers.

Judgment should therefore pass to the effect that the said fund should be paid over to said New York receivers, and, after deducting the expenses of their receivership, to be fixed by the court, the remainder should be paid to said Cyrus J. Clark, as receiver, upon condition that he shall first file an undertaking, to be approved by a judge of this court, to the effect that said receiver shall administer and distribute said fund for the equal benefit of all the creditors and holders of relief benefit certificates whose claims had been approved and allowed up to the appointment of said Clark as receiver, December 14, 1900, according to their respective classes or grades, as fixed by the constitution, by-laws, and regulations of said order, without

preference, priority, or distinction between those in the same grade or class of creditors or holders of relief benefit certificates by reason of residence in any particular state, and that the same shall be distributed equitably pro rata according to the rights of said claimants under the constitution, by-laws, and regulations of said order, as authorized by law.   Judgment may be prepared accordingly.

Judgment accordingly.